IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LEROY ANDREW
WASHINGTON

   Plaintiff,         CV 06-J-1320-S

v.

BELLSOUTH
TELECOMMUNICATIONS,
INC.,

   Defendant.

### MEMORANDUM OPINION

  Pending before the court is the defendant's motion for summary judgment (doc. 54). The defendant's motion is supported by a brief and evidentiary submissions (doc. 55 & attachments 1-23 to doc. 55). The plaintiff filed a brief in response (doc. 62), to which the defendant filed a reply (doc. 63).

  Upon consideration of the pleadings, memoranda of the parties, and evidentiary submissions received, the court is of the opinion that the defendant's motion for summary judgment is due to be granted.

## FACTUAL BACKGROUND

The plaintiff, who is black, brings claims for discrimination, retaliation, and breach of contract against the defendant pursuant to 42 U.S.C. section 2000e, *et seq.*, and 42 U.S.C. section 1981. The plaintiff worked for the defendant from June 2, 1975, until he was terminated for insubordination on January 27, 2005. Washington depo., at 8-9. At the time of his termination, the plaintiff was working at the Birmingham Data Center in Hoover, Alabama, as a systems specialist technician. *Id.*

In January of 2005, the plaintiff had the following "active" entries in his personnel file: (i) September 9, 2004, counseling for unsatisfactory performance; (ii) September 13, 2004, counseling for misconduct; (iii) September 22, 2004, warning for misconduct, which was reduced on October 21, 2004, to a counseling; (iv) October 19, 2004, warning for misconduct; (v) November 5, 2004, warning for unsatisfactory performance; and (vi) November 16, 2004, suspension for misconduct. Defendant's exh. 1.

On January 27, 2005, Patricia Cooper, the plaintiff's supervisor, asked the plaintiff to sit down with her and discuss his year end performance review for 2004. Washington depo., at 40. The plaintiff declined to meet with Ms. Cooper without a union representative present. *Id*. at 41-42. Ms. Cooper told the plaintiff

that he was not entitled to have a union representative at the meeting. *Id*. at 42. Ms. Cooper asked the plaintiff a second time if he would meet with her and he again refused. *Id*. at 43-44.

Following the plaintiff's refusal to meet with Ms. Cooper, the decision was made by Ms. Cooper, Ms. Cooper's supervisor Randy Beech, and human resources to terminate the plaintiff for insubordination. Washington dep., at 44; Beech aff., at ¶ 5. After the plaintiff's termination, his union, the Communication's Workers of America ("CWA"), filed a grievance on the plaintiff's behalf. Washington dep., at 50; Beech aff., at ¶ 7. The plaintiff also filed a charge of discrimination with the EEOC. Defendant's exhibit B.

The plaintiff's termination on January 27, 2005, left the plaintiff only months short of reaching the thirty year milestone. Washington depo., at 81; Beech aff., at ¶ 8. The CWA expressed to the defendant a desire to get the plaintiff to thirty years seniority so that he could retire with retiree medical coverage and an unreduced pension. Washington depo., at 82-83; Beech aff., at ¶ 8. The CWA proposed a plan where the plaintiff would be placed in the "Job Bank," a status for bargaining unit members who lose their jobs through, for example, lay off. Beech aff., at ¶ 9. The amount of time that an employee can spend in the Job Bank is determined by seniority. *Id*. While in the "Job Bank,"

the employee does no work, but does get paid and accumulates seniority.  *Id*.; Article 24.05 of Defendant's exh. A.

On February 3, 2005, the plaintiff executed a signed, handwritten statement that reads "I would like to be processed under Article 7 in the Job Bank.  I do not plan on pursuing another position."  Washington depo., at exh. 4 thereto; Beech aff., at ¶ 10.  At a February 7, 2005, grievance meeting with CWA, Mr. Beech informed the plaintiff that his statement was unacceptable because Mr. Beech did not want the plaintiff working for BellSouth or any of its subsidiaries.  Washington depo., at 58, 71-72; Beech aff., at ¶ 11.  Following the meeting, the plaintiff wrote and signed a second statement that reads "I will not seek future employment with BellSouth.  At the conclusion of the job Bank I will be terminated and become a retired employee."  Washington depo., at exh. 3 thereto; Beech aff., at ¶ 12.

Based on plaintiff's written promise that he would not seek future employment with BellSouth, Mr. Beech agreed to settle the grievance by reinstating the plaintiff into the Job Bank where he would get (i) termination pay for 86 weeks; (ii) accumulate seniority; and (iii) retire with thirty years of service.  Beech aff., at ¶ 13.  As part of the settlement, the plaintiff executed a written release, which the plaintiff and Mr. Beech's boss Greig Tooley signed.  *Id*.  The

release states

> In consideration of the reinstatement of my employment with BellSouth and my placement in the Job Bank with a termination allowance as provided in Section 8.05B of the Working Agreement between the CWA and BellSouth, I hereby fully waive, discharge, and release any and all claims of whatever nature, known or unknown, I may have against BellSouth . . ., as a result of actions or omissions occurring through this date. Specifically included in this waiver and release are any and all claims of alleged employment discrimination under . . . Title VII of the Civil Rights Act of 1964 . . ., and any and all claims under any other federal, state, or local statutory or common law or regulation.

Washington depo., at exh. 9.

After learning of the parties' private settlement, the EEOC dismissed the discrimination charge by the plaintiff. Defendant's exh. C. Even though the plaintiff agreed not to seek any further employment with the defendant, he continued to apply for jobs with BellSouth. Washington depo., at exh. 9 thereto. BellSouth did not hire the plaintiff for any of these jobs based on the plaintiff's disciplinary record. Washington depo., at p. 355-57.

The plaintiff filed a new EEOC charge on July 2, 2005. Defendant's exh. D. On April 10, 2006, the EEOC issued a notice of right-to-sue finding that, "the EEOC is unable to conclude that the information obtained established violations of the statutes." Defendant's exh. E.

As a twenty-nine year employee, the plaintiff was entitled to spend forty weeks in the Job Bank. Washington dep., at 79. The plaintiff's term in the Job Bank ended on December 31, 2005, at which time he retired with a non-discounted pension and retiree healthcare benefits. *Id*. at 488, 489

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Supreme Court has explained the summary judgment standard as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Id.* at 322-23 (quoting Fed. R. Civ. P. 56(c)). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis

for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). In meeting this burden the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson,* 477 U.S. at 248. All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *Fitzpatrick v. City of*

*Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Id*. at 249.  The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-252.

## DISCUSSION

In counts I and II of the Amended Complaint, the plaintiff claims that the defendant discriminated and retaliated against the plaintiff by disciplining the plaintiff, giving the plaintiff poor evaluations, terminating the plaintiff, and refusing to rehire the plaintiff.  In his brief, the plaintiff only addresses the failure to rehire claim.  Therefore, the plaintiff seems to acknowledge that the release is valid and enforceable with respect to all of the plaintiff's claims of discrimination and retaliation except for the failure to rehire claim.  The defendant's response is that the release is valid and enforceable with respect to all of the plaintiff's claims including the failure to rehire claim.

The Eleventh Circuit Court of Appeals has previously held that a cause of action for failure to rehire accrues at the same time as does the termination claim. In *Burnam v. Amoco Container Co.*, 755 F.2d 893, 894 (11th Cir. 1985), the plaintiff filed a charge with the EEOC more than 180 days after her discharge. The plaintiff argued that her charge was timely because the discrimination did not occur until the date on which she was denied reinstatement. *Id*. at 894. The court held that "a failure to rehire subsequent to an allegedly discriminatory firing, absent a new and discrete act of discrimination in the refusal to rehire itself, cannot resurrect the old discriminatory act." *Id*. at 894. The court reasoned that "[o]therwise, a potential plaintiff could always circumvent the limitations by reapplying for employment." *Id*. at 894.

The reasoning in *Burnam* is applicable to the present case. The plaintiff was told by Mr. Beech in no uncertain terms before he signed the release that BellSouth would never hire him for another job. Consequently, the decision not to rehire the plaintiff was made before the plaintiff signed the release. The plaintiff should not be allowed to circumvent the clear language of the release which he signed by reapplying for a job with the defendant. Therefore, the plaintiff's claim for failure to rehire came into existence at the time he was terminated and was effectively released when he signed the release.

Even if the release did not apply to the failure to rehire claim, the plaintiff has presented no evidence of discrimination or retaliation by the defendant. The plaintiff has presented no evidence that the decision to not hire him was based on anything other than his extensive disciplinary record.

In count III of the Amended Complaint the plaintiff brings a claim for breach of contract alleging that the defendant breached the settlement agreement. It is undisputed that in return for the plaintiff releasing all of his claims against the defendant, the defendant would reinstate the plaintiff into the Job Bank and pay him 86 weeks of termination pay. Washington depo. 484-88. The plaintiff admits that he was placed in the Job Bank, where he was allowed to accumulate seniority and reach the thirty year milestone, and that he was paid 86 weeks of termination pay.[1] *Id.* Clearly, the defendant has performed its end of the bargain. If anyone has breached the agreement it is the plaintiff who has continued to apply for jobs with the defendant.

---

[1] Other than the allegations in the plaintiff's Amended Complaint, the court cannot find any evidence of the promises that the plaintiff claims the defendant made concerning not suspending the plaintiff and removing entries in the plaintiff's personnel file.

## Conclusion

Having considered the foregoing, and finding that the plaintiff has failed to establish any genuine issues of material fact, the court **ORDERS** that the defendant's motion for summary judgment is **GRANTED**.  A separate order shall be entered.

**DONE** and **ORDERED** this the 16th day of November 2007.

                                                INGE PRYTZ JOHNSON
                                                U.S. DISTRICT JUDGE